J-S38009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.F.-O., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 609 MDA 2020 |

Appeal from the Decree Entered March 3, 2020,
in the Court of Common Pleas of Lycoming County,
Orphans' Court at No(s): 6673.

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED OCTOBER 23, 2020**

J.S. (Father) appeals the orphans' court decree terminating his parental rights to 21-month-old son, J.S. (Child), pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[1] After review, we affirm.

We glean the relevant factual and procedural history from the Pa.R.A.P. 1925(a) trial court opinion:

> [Child] was born [in April 2018]. […] Father was incarcerated prior to [Child's] birth and has remained incarcerated for [Child's] entire life.
>
> The [Lycoming County Children and Youth Services Agency (Agency)] was involved with Mother prior to and after [Child's] birth, due to Mother's instability with regard to housing, employment, income, and Mother's failure to obtain and follow through with appropriate medical care for

---

[*] Former Justice specially assigned to the Superior Court.

[1] C.F.-O. (Mother) consented to the termination of her rights.

[Child], who was born nearly two months premature. In July of 2018, Mother and Father signed a private custody stipulation with [two women who wished to adopt Child], which was vacated by [the trial court] on October 17, 2018. At that time, the Agency requested emergency custody of [Child], which was orally granted by [the trial court]. A shelter care hearing was held on October 18, 2018, at which time legal and physical custody of [Child] was transferred to the Agency and [Child] was placed in foster care.

A dependency petition was filed on October 19, 2018, alleging that [Child] was without proper parental care or control necessary for his physical, mental, and emotional health. Hearings were held on October 26, 2018 and November 27, 2018, after which the [trial court] found that clear and convincing evidence existed to substantiate the allegations set forth in the petition. As [the trial court] found that allowing [Child] to remain in Mother's home would be contrary to his welfare and Father's incarceration precluded him from being a resource, legal and physical custody of [Child] was to remain with the Agency and [Child] was to remain in foster care. The Agency was ordered to continue in family finding until further order of court.

A permanency review hearing was held on February 5, 2019. The [trial court] noted that Father had not complied with the permanency plan in that he remained incarcerated at the Lycoming County Prison in lieu of bail pending trial on an aggravated assault charge. At the time of the review hearing, he was in disciplinary lock-up for, among other reasons, engaging in assaultive behavior. During the review period, he wrote one letter to the Agency caseworker and had prepared two letters and one drawing for [Child]. Due to his continuous incarceration, Father had made no progress towards alleviating the circumstances which necessitated [Child's] placement. Following the hearing, the [trial court] reaffirmed dependency and [Child] remained in the legal and physical custody of the Agency with continued placement in his foster care home.

A permanency review hearing was held on May 21, 2019. The [trial court] found that there had been no compliance by Father with the permanency plan, and no progress towards alleviating the circumstances which necessitated placement, as he remained incarcerated at the Lycoming

County Prison for the entire review period. Father reported that he had not become involved in any programs at the prison for mental health and/or domestic violence. The [trial court] noted that during this review period Father sent one letter to the caseworker and one letter to [Child].

A permanency review hearing was held on August 29, 2019. Again, the [trial court] found that there had been no compliance by Father with the permanency plan, and no progress towards alleviating the circumstances which necessitated placement, as he remained incarcerated at the Lycoming County Prison for the entire review period. Father had not reported becoming involved in any programs at the prison for mental health and domestic violence. The [trial court] found that during this review period, Father had sent letters and drawings to both the Agency and [Child]. On May 28, 2019, Father was sentenced to state incarceration for a period of three to seven years. It was anticipated that with credit for time served, he would be eligible for parole in approximately 17 months from the date of the review hearing.

The [trial court] noted that Father felt very strongly that [Child] should be with a member of his family. He had requested the Agency investigate multiple people as potential resources for [Child]; however, at the time of the review hearing none of the named individuals had provided necessary information or completed the process to be considered as resources for [Child]. At the permanency review hearing Father named additional family members as potential resources and the Agency was to investigate whether these newly named individuals were appropriate resources for [Child].

On November 18, 2019, the Agency filed a petition for change of goal to adoption simultaneously with the filing of the petition or involuntary termination of parental rights. […].

Both a permanency review hearing and a pre-trial hearing on the petition […] were held on December 3, 2019. Following the permanency review hearing, the [trial court] found that Father had been incarcerated at SCI Coal Township throughout the review period and was minimally compliant with the permanency plan and in alleviating the

- 3 -

circumstances which necessitated [Child's] placement. Father reported that he was now involved in programs at the prison for substance abuse, mental health, and domestic violence. During the review period, Father sent letters to the Agency and [Child] and made attempts to speak with [Child]. Father's aunt was participating in a home study to be approved as a resource parent for [Child]. The [trial court] directed the Agency to complete the home study for Father's aunt.

The hearing on the petition for involuntary termination of parental rights was scheduled for February 10 [] and February 11, 2020. […] Mother signed a consent to adopt on February 10, 2020, and on that date conceded on the record that the evidence the Agency would have presented at the hearing would have proven by clear and convincing evidence that Mother's rights should be involuntarily terminated […]. Father was present for the hearing and testimony was concluded on February 10, 2020.

Trial Court Opinion (T.C.O.), 3/2/20, at 2-5 (citations to the record and superfluous capitalization omitted).

On March 3, 2020, the court entered its decree terminating Father's rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Father timely filed this appeal and presents the following four issues for our review:

1. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Father's] rights should be terminated under 23 Pa.C.S.A. § 2511(a)(1) in that Father was unable to perform most parental duties due to his incarceration and he utilized all available resources while incarcerated?

2. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Father's] rights should be terminated under 23 Pa.C.S.A. § 2511(a)(2) in that Father's incapacity to perform parental duties is temporary and can be cured within a reasonable time?

- 4 -

3. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Father's] rights should be terminated under 23 Pa.C.S.A. § 2511(a)(5) and (a)(8) in that Child was never removed from Father's care?

4. Whether the trial court erred in determining that clear and convincing evidence existed to show that [Father's] rights should be terminated under 23 Pa.C.S.A. § 2511(b), in that the developmental, physical, and emotional needs and welfare of Child are not served by terminating Father's parental rights?

Father's Brief at 4.

We review these claims mindful of our well-settled standard or review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first -hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

- 5 -

> evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as Section (b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the trial court's decision to terminate pursuant to Section 2511(a)(2) and (b), which Father challenges in issues two and four on appeal. Those sections provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]

(2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

[…]

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b)

We begin with the first prong of the termination analysis under Section 2511(a).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citations, internal quotation marks, and indentation omitted).

Father acknowledges his incarceration rendered him incapable of parenting, and that such incapacity has caused Child to be without essential care, control, or subsistence necessary for his physical or mental well-being. In other words, Father essentially concedes that the Agency proved the first two elements of the Section 2511(a)(2) analysis. The crux of Father's appeal is the third element. He argues his incapacity can be remedied in a reasonable time, because his release from incarceration could be imminent. *See* Father's Brief at 11-14.

As Father rightly observes, our Supreme Court has contemplated this element in relation to incarcerated parents:

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2).

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012).

Instantly, Father was incarcerated for a term of three to seven years for aggravated assault. With credit for time served, his earliest possible parole date is January 2021. *See* Father's Brief at 14. Though the length of Father's remaining confinement is "highly relevant," it does not end our inquiry. Just

because a parent is due to be released from prison does not necessarily mean the parent is in an immediate position to resume his parenting duties – *i.e.*, to actually remedy his incapacity.

Here, the Agency posits Father would need to demonstrate stable housing, employment, and visitation for approximately six months after his release before reunification could be achieved. Although we are cautious not to suggest such a timeframe could or should be tacked on to every incarceration case, it must be acknowledged that those "conditions and causes" which underpin a dependency case do not vanish merely because a parent is paroled. This is especially true in the instant matter, as Father's incarceration began prior to Child's birth, and he has never parented the Child. His occasional letter-writing is heartening, and perhaps very relevant in a case with an older child who had been previously raised by the parent; but this Child is only a toddler who has never known Father and who has been with his pre-adoptive foster parents for the vast majority of his young life.

Moreover, the only proactive, substantial effort Father undertook to remedy his incapacity was to take parenting classes while in prison. But Father was barred from partaking in these programs until the 11th hour of the dependency case, because of his behavior while incarcerated landed him in disciplinary lock-up. As the trial court noted, "Father's infractions – which ranged from possessing contraband to physical altercations to general disrespect towards staff members and disruption of prison routine – caused him to be in a situation where he was ineligible to participate in mandatory

and optional programs that would have greatly benefitted his journey towards reunification." T.C.O. at 12-13. The trial court operated within its discretion when it determined incapacity would continue to persist, even if only temporarily, upon Father's hypothetical release.

Father's infractions during incarceration raise another concern. While we are careful not to speculate, we question the likelihood that Father would even be paroled at the earliest possible date, given his disciplinary issues at the prison. It suffices to say that a January 2021 release is by no means guaranteed. Meanwhile, Father's maximum incarceration date is approximately January 2025.

Therefore, Father's imminent release date is only theoretical, and even if he was released in the coming months, the Agency provided sufficient evidence to demonstrate Father's incapacity to parent would persist thereafter. We conclude the trial court was within its discretion to determine that the Agency met the third and final element of the Section 2511(a)(2) analysis. Father's second issue is without merit. Since we only need to affirm one section (a) subsection, we need not address either Father's first or third appellate issues (pertaining to Section 2511(a)(1), (5) and (8)).[2]

---

[2] Although we analyze the first prong of the termination analysis under Section 2511(a)(2), it bears mentioning that incarceration has been contemplated in relation to Section 2511(a)(1) as well. We have said:

> A parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not

Having concluded the trial court did not abuse its discretion regarding the first prong of the termination analysis under Section 2511(a), we turn to Father's fourth appellate issue to decide whether the court erred in its application of the second prong of the analysis under Section 2511(b). This section addresses the needs and welfare of the child under the standard of the best interests of the child. *See In re C.M.K.*, 203 A.3d 258, 261 (Pa. Super. 2019) (citation omitted). Specifically, Section 2511(b) provides:

> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," his other rights may be forfeited.

*In re Adoption of A.C.*, 162 a.3d 1123, 1130 (Pa. Super. 2017) (citation omitted).

As we mentioned above, Father's misconduct while incarcerated prevented him from utilizing all available resources to aid reunification. In other words, Father's incarceration is suggestive that termination was also warranted under Section 2511(a)(1), as opposed to the contrary.

- 11 -

23 Pa.C.S.A. §2511(b).

Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *C.M.K.*, 203 A.3d at 262 (citation omitted). When conducting a bonding analysis, the court is not required to use expert testimony. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008) (citation omitted).

Instantly, Father concedes his incarceration has prevented him from establishing a bond with Child. *See* Father's Brief at 17. His argument is that Child's young age is conducive to forming a bond when he is released, and that we should consider Child's long future and the role Father could play in it. *Id.* Although Father expresses a desire to be a positive role model for Child, "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *Z.P.*, 994 A.2d at 1121. Instead, the primary focus is on the child's need and welfare. *In re L.M.*, 923 A.2d at 511.

At the time of the termination hearing, Child was approximately 21 months old. Child has been in his pre-adoptive foster home since he was 5 months old. And he has never been in Father's care. Thus, it is no surprise

that Child views his foster parents as his mother and father. Not only have the foster parents provided for Child's needs and welfare, they also provide Child necessary stability and security for his continued development. We conclude the court did not abuse its discretion when it determined that termination would best serve Child's interests. Father's fourth issue is without merit.

In sum, we conclude that the trial court did not err or otherwise abuse its discretion when it determined the Agency met both prongs of the termination analysis under Section 2511(a)(2) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/23/2020</u>